IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY R. WENK and LEE ANN WENK, | ) | CIVIL DIVISION |
| | ) | |
| | ) | No.  2:22-cv-00433-CCW |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S BRIEF IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

AND NOW, comes the Defendant, State Farm Fire and Casualty Company ("State Farm")

by and through its attorneys, Burns White LLC, and files the following Brief in Opposition to

Plaintiffs' Motion for Summary Judgment.

## I.    INTRODUCTION

Judicial privilege precludes summary judgment in Plaintiffs' favor, and instead warrants

the entry of summary judgment in favor of State Farm.

Even if the judicial privilege did not apply, Plaintiffs' claim fails due to the lack of

damages.  While Plaintiffs claim that they are entitled to "liquidated damages," the very definition

of "liquidated damages" requires a sum agreed upon by the parties for damages in the event of a

breach.  It is clear from the record that no such agreement exists in this case.  Plaintiffs' attempt to

support a claim for liquidated damages—in a case where no actual damages exist—based upon

Plaintiffs' own "estimate" of damages is contrary to law and is meritless.

Even if this Court found that the Settlement Agreement provides for the recovery of some

unknown and unidentified amount of "liquidated damages," the provision is unenforceable in the

absence of an agreement upon an amount.

Furthermore, the liquidated damages clause should be stricken as an unenforceable penalty provision.

## II.    ARGUMENT

### A.    Filing the Motion to Compel Production of the Settlement Agreement Is Not a Breach of the Settlement Agreement.

State Farm's filing of a motion in the Insurance Lawsuit to compel Plaintiffs to produce the Settlement Agreement and provide testimony on its terms is not a basis for liability against State Farm.  It is well-established under Pennsylvania law that pleadings made in the course of litigation for purposes of asserting a claim or defending against a claim are absolutely privileged under the doctrine of litigation immunity (also referred to as "judicial privilege").  See Pawlowski v. Smorto, 588 A.2d 36, 41 (Pa. Super. 1991).

The "protected realm" of the judicial privilege is limited to "those communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought."  Id.  Moreover, the privilege extends "not only to communications made in open court, but also encompasses pleadings…"  Id.  Whether a particular statement is absolutely privileged is a question of law for the court.  Id.

The judicial privilege is not limited to the defense against defamation claims as the Superior Court in Pawlowski placed no such limitation on the judicial privilege.  Rather, the only limitation identified by the Superior Court for the judicial privilege was with respect to the types of communications for which the privilege is afforded: "those communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought," including pleadings.  Id.

While Pennsylvania has not yet extended the judicial privilege to breach of contract actions, the Pennsylvania Supreme Court has held that extensions of the privilege should be based

2

chiefly on whether the extension would serve the policy goals of the privilege. <u>LLMD of Michigan, Inc. v. Jackson–Cross Co.</u>, 740 A.2d 186 (Pa.1999). "This privilege is based on the 'public policy which permits all suiters, however bold and wicked, however virtuous and timid, to secure access to the courts of justice to present whatever claims, true or false, real or fictitious, they seek to adjudicate'…'[t]o assure that such claims are justly resolved, it is essential that pertinent issues be aired in a manner that is unfettered by the threat of libel or slander suits being filed.'" <u>Bochetto v. Gibson</u>, 860 A.2d 67, 71 citing <u>Post v. Mendel</u>, 507 A.2d 351, 355 (Pa. 1986).

Many other jurisdictions have approved the use of the privilege as a defense to contract-based claims. <u>See</u> <u>Kimmel & Silverman, P.C. v. Porro</u>, 53 F.Supp.3d 325, 343–44 (D.Mass. 2014) (finding that the judicial privilege barred breach of contract actions for the alleged breach of the terms of a settlement agreement); <u>Johnson v. Johnson & Bell, Ltd.</u>, 379 Ill.Dec. 626, 7 N.E.3d 52, 56 (Ill.App.Ct. 2014) (finding that the judicial privilege barred breach of contract claims arising out of the failure to redact plaintiff's personal information from documents attached to a final pretrial order in previous action); <u>Rain v. Rolls–Royce Corp.</u>, 626 F.3d 372, 377–78 (7th Cir. 2010) (describing cases in which courts in other jurisdictions have found that the absolute litigation privilege was applicable to claims for breach of contract, and predicting that Indiana Supreme Court would refuse to impose liability for violation of a settlement agreement based on application of the privilege); <u>Kelly v. Golden</u>, 352 F.3d 344, 350 (8th Cir. 2003) (holding that Missouri's absolute privilege precluded liability for an alleged breach of a confidentiality agreement based on statements made in a judicial proceeding); <u>Ellis v. Kaye–Kibbey</u>, 581 F.Supp.2d 861, 879–81 (W.D.Mich. 2008) (predicting that the Michigan Supreme Court would hold that the absolute litigation privilege "preclude[s] breach-of-contract liability [for] one who gives testimony or produces information in a judicial proceeding—at least to the extent that such action was necessary

3

to comply with a subpoena or other order"). <u>Wentland v. Wass</u>, 126 Cal.App.4th 1484, 1492, 25 Cal.Rptr.3d 109 (2005) ("whether the litigation privilege applies to an action for breach of contract turns on whether its application furthers the policies underlying the privilege").

These courts have explained that the privilege would be "valueless" or "meaningless" if the opposing party could bar application of the privilege by drafting the claim with a non-tort label. <u>Kimmel & Silverman, P.C.</u>, 53 F.Supp.3d at 343; <u>Johnson</u>, 7 N.E.3d at 56. To refuse to consider applying the privilege when the claim is not labeled as a tort is to ignore the policy goals of the privilege.

Here, the application of judicial privilege to Plaintiffs' breach of contract claim is appropriate as it would be consistent with the purpose of the privilege. State Farm's motion to compel the production of the Settlement Agreement was a pleading filed in the regular course of judicial proceedings of the Insurance Lawsuit. As evidenced by the fact that the Court granted State Farm's motion to compel, the motion was necessary for State Farm to assert that a setoff should be applied to the award issued by the Court in favor of Plaintiffs in that action. If State Farm had been precluded from filings its motion to compel due to the threat of litigation against it, then the issues in the Insurance Lawsuit would not be "justly resolved" and against the policy goals of the privilege. Because Plaintiffs' breach of contract claim relates to the pleading submitted to a court that was relevant to that proceeding, the judicial privilege operates as a complete defense to Plaintiffs' claims. Therefore, under the judicial privilege, the filing of the motion to compel was a privileged communication that cannot form the basis for liability.

**B.** **State Farm Did Not Agree to Any Amount of Liquidated Damages.**

The Settlement Agreement does not identify a specific amount of liquidated damages because no party to the Settlement Agreement, including State Farm, agreed to any amount of liquidate damages.

Liquidated damages are defined as "the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable…if the breach occurs." Pantuso Motors, Inc. v. Corestates Bank, N.A., 798 A.2d 1277, 1282 (Pa. 2002) (internal citations omitted).

By definition, a liquidated damages clause requires an agreement on "the sum a party to a contract agrees to pay" in the event of a breach. Here, the parties never agreed on a specific amount of liquidated damages to be paid following a breach of the Settlement Agreement's confidentiality provision. Even Plaintiffs acknowledge, as they must, that the confidentiality provision does not identify the value of liquidated damages to be paid in the event of a breach. See Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, p. 6.

While Plaintiff contends that "parole evidence" supports the award of liquidated damages, under Pennsylvania law, "[o]nce a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract." Youndt v. First Nat. Bank of Port Allegany, 868 A.2d 539, 546 (Pa. Super. 2005). Under such circumstances, "the law declares the writing to be not only the best, but the only, evidence" of the parties' agreement. Gianni v. Russell & Co., 126 A. 791, 792 (Pa. 1924)

Here, the Settlement Agreement is an integrated document that states in no uncertain terms "this is a complete, Full and final Mutual Release and Settlement Agreement among the parties to this Agreement and there are no written or oral understandings or agreement directly or indirectly connected with this Agreement that are not expressed or incorporated herein…" See Settlement Agreement, Section7, p. 13.  The agreement also states that Plaintiffs "are currently represented by their own legal counsel and have been advised by such counsel in all matters pertaining hereto and admit that no representation of fact or opinion has been made by Defendants or Defendants' insurers or anyone acting on their behalf to induce this compromise or payment or release."  See Settlement Agreement, Section7, p. 13.  A release that states that "no representations…of any of the parties released have induced us to make this settlement" is a fully integrated document to which the parol evidence rule applies.  Butcher v. General Motors Co., et al., 2015 WL 867797, at *1 (W.D. Pa. Feb. 27, 2015).

Furthermore, even if parol evidence were to be considered, the evidence supports State Farm's position, not Plaintiffs'. The email correspondence and draft Settlement Agreement submitted by Plaintiffs as Exhibits B and C to Plaintiffs' Concise Statement of Material Facts confirm that there was no meeting of the minds on liquidated damages.  In fact, counsel for one of the parties to the Settlement Agreement informed Plaintiffs' counsel that "setting any dollar value would be improper."  See Exhibit B to Plaintiffs' Concise Statement of Material Facts.  Simply put, the parties to the Settlement Agreement did not agree to a specific amount of liquidated damages, which is why there is no amount included in the Settlement Agreement.

While Plaintiffs testified that he believes he is entitled to $250,000 in "liquidated damages," Plaintiff asserting an amount he would like to receive does not "liquidate" damages or constitute an agreement.

In the absence of a valid liquidated damages clause, only actual damages may be recovered. Robins Motor Transp., Inc. v. Associated Rigging & Hauling Corp., 944 F. Supp. 409, 412 (E.D. Pa. 1996). But Plaintiffs have not, and cannot, establish actual damages either. In fact, Plaintiffs admitted that they are unaware of any actual harm as a result of State Farm's actions. [1] See State Farm's Concise Statement of Facts, ¶ 19. While Mr. Wenk testified that he believed it was possible that the Supplemental Brief was somehow recorded on a "third-party server" during the short period of time it was publicly available, he was unable to identify any "third-party" that recorded, or could have recorded, the filing. See State Farm's Concise Statement of Facts, ¶ 19-20. Moreover, Mrs. Wenk admitted that Plaintiffs have not suffered any harm as a result of the Supplemental Brief being accessible on the electronic docket for a short period of time. See State Farm's Concise Statement of Facts, ¶ 21. Consequently, Plaintiffs' breach of contract claims fail because Plaintiffs failed to establish that they were damaged by State Farm's purported breach.

## C.      The Liquidated Damages Clause Should Be Stricken as an Unenforceable Penalty Provision.

Even if this Court finds that the Settlement Agreement provides for the recovery of some unknown and unidentified amount of "liquidated damages," the liquidated damages provision should be stricken as an unenforceable penalty provision.

Pennsylvania courts have invalidated liquidated damages clauses where the actual damage suffered is found to be wholly disproportionate to the agreed upon figure in the liquidated damages clause. Pennsylvania law does not require the party seeking recovery under a valid liquidated

---

[1] While Plaintiffs express concerns regarding their privacy with regard to the disclosure of the Settlement Agreement, those concerns seem to ring hollow when, absent this litigation in which Plaintiffs themselves have revealed terms of the Settlement Agreement, the Settlement Agreement would have remained completely private once removed from the public docket after approximately one week.

7

damages clause to prove actual damages.  Sutter Corp. v. Tri-Boro Mun. Authority, 487 A.2d 933, 936 (1985).  However, in their analysis of whether a liquidated damages clause is valid, Pennsylvania courts can compare the amount of assessed liquidated damages with either the anticipated or the actual harm suffered by the non-breaching party.  D.A. Nolt, Inc. v. Philadelphia Mun. Auth., 463 F. Supp. 3d 539, 547 (E.D. Pa. 2020).  If the disparity between the damages awarded under the liquidated damages clause and the actual harm suffered is deemed unreasonable, the court will void the contractual provision as a penalty.  See Id.

To be enforceable, "liquidated damages must be a reasonable forecast to the possible harm to the non-breaching party" rather than an unlawful penalty.  Palmieri v. Partridge, 853 A.2d 1076, 1080 (Pa. Super. 2004).  Conversely, a penalty is fixed, "not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach."  Pantuso Motors, 798 A.2d at 1282.

Where the amount of damages is fixed in advance and is intended as a form of punishment, such that (1) the threat is designed to secure contractual compliance, or (2) is so grossly disproportionate to the amount of the probable loss in the event of a breach, it is considered a penalty, not compensation, and is unenforceable as a matter of public policy.  Holt's Cigar Co. v. 222 Liberty Assoc., 591 A.2d 743 (Pa. Super. 1991).  It is uneconomical to penalize a breaching party or to provide a windfall to a non-breaching party; therefore, courts will not enforce a liquidated damages clause that is in reality a penalty clause.  Id. at 747.

Applying the foregoing principles to the undisputed facts of this case, the liquidated damages clause should be unenforceable because it was intended as a penalty provision.  The proposal of $250,000 was based upon Plaintiffs' reduction of their demand by $250,000 in the underlying litigation rather than any calculation or estimate of damages if the confidentiality

provision were breached.  See State Farm's Concise Statement of Facts, ¶ 25.  There is no evidence that Plaintiffs attempted to forecast the actual damages they might sustain in the event of a breach of the confidentiality provision.

Because the liquidated damages clause is an unenforceable penalty provision, it should be stricken.  Where a liquidated damages clause is stricken, only actual damages may be recovered. Robins Motor Transp., Inc., 944 F. Supp. at 412.  As discussed above, Plaintiffs have not suffered any actual damages.

### III.    CONCLUSION

For the reasons set forth above, State Farm respectfully requests that this Court deny Plaintiffs' Motion for Summary Judgment, and grant State Farm's Motion for Summary Judgment.

Respectfully submitted,

BURNS WHITE LLC

By:    /s/ Daniel J. Twilla
Daniel J. Twilla (PA I.D. 93797)
E-mail: djtwilla@burnswhite.com
Daniel W. Inadomi (PA I.D. 312984)
E-mail:  dwinadomi@burnswhite.com
Burns White Center
48 26th Street
Pittsburgh, PA  15222
(412) 995-3286 – Direct
(412) 995-3300 – Fax
*Attorneys for Defendant*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned does hereby certify that on May 18, 2023 a true and correct copy of the within **DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** was filed via the Electronic Filing System. Parties may access this filing through the ECF filing system.

/s/ Daniel J. Twilla
Daniel J. Twilla
