IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY R. WENK, LEE ANN WENK,<br><br>        Plaintiffs,<br><br>    v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>        Defendant. | 2:22-CV-00433-CCW |

## **OPINION**

Before the Court are cross-motions for summary judgment filed by Plaintiffs Jeffrey R. Wenk and Lee Ann Wenk ("the Wenks") and Defendant State Farm Fire and Casualty Company. ECF Nos. 32, 36. For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** both Motions and enter a judgment of nominal damages in favor of the Wenks.

**I.    Background**

This federal case arises from two underlying cases in Pennsylvania state court regarding damage to the Wenks' home that occurred when contractors were repairing and replacing exterior siding. ECF No. 45 ¶ 1. State Farm, the Wenks' home insurer, was involved in both of the underlying actions. In the first state-court action, the Wenks and State Farm, as subrogee, sued the contractors to recover the damages caused during the siding project. *Id.*; ECF No. 46 at 5. In the second state-court action, the Wenks sued State Farm for bad faith and breach of contract relating to its handling of the Wenks' homeowners' insurance claim. ECF No. 45 ¶ 3. The Court will refer to the first state case as the "Contractor Action" and the second as the "Coverage Action."

On August 25, 2017, the Wenks, State Farm, and the contractors entered into a Full and Final Mutual Release and Settlement Agreement (the "Settlement Agreement"), in which the

Wenks released their claims in consideration of a settlement payment. ECF No. 46 at 4, 8–9. As relevant here, the settlement contained a confidentiality provision generally prohibiting the parties from disclosing the terms of the settlement. *Id.* at 14. The provision included a "limited exception" for the Coverage Action, which allowed the parties to disclose the fact of a settlement and also allowed the parties to disclose the terms of the settlement, but only "pursuant to an order of the court." *Id.* at 14–15.

The Settlement Agreement also contains language regarding liquidated damages. Specifically, the parties agreed that breaches of the confidentiality provision would "be deemed a material breach for which the breaching party shall be responsible for the payment of liquidated damages." *Id.* at 15. Notably, however, the parties did not set an amount of liquidated damages in the executed Settlement Agreement. *See id.* In an earlier draft, the Wenks' attorney had proposed $250,000 as the amount of liquidated damages. *Id.* at 42–43. But in response, attorneys representing the various contractors objected to the inclusion of any amount of liquidated damages. *Id.* at 43. Counsel for State Farm, in an email, agreed that "setting any dollar value [for the liquidated damages] would be improper." *Id.* at 25.

On September 12, 2017, State Farm filed a motion in the Coverage Action requesting a court order that would allow it to disclose the terms of the settlement as part of an argument for a setoff. ECF No. 40 at 54–55. The state court granted the motion and entered an order allowing the terms of the settlement to be filed under seal. ECF No. 45 ¶ 8. When State Farm briefed the issue of a setoff, however, it included Settlement Agreement terms—including the total amount of the payment made to the Wenks—in its public filing. *Id.* ¶ 9; ECF No. 43 ¶¶ 13–14. The brief remained on the docket for approximately one week. ECF No. 45 ¶ 16.

State Farm's disclosure of settlement terms in the Coverage Action prompted the instant suit. The Wenks allege that State Farm breached the confidentiality provision by (1) disclosing the terms of the Settlement Agreement on the public docket in the Coverage Action (Count I) and (2) moving for permission to disclose the terms of the Settlement Agreement in the Coverage Action (Count II). ECF No. 1-2 ¶¶ 24–33. The Wenks seek $250,000 in liquidated damages. *Id.* at 8. At the close of fact discovery, both parties moved for summary judgment. ECF Nos. 32, 36. Those Motions are now fully briefed and ripe for adjudication. *See* ECF Nos. 33, 37, 42, 44, 47, 48.[1]

## II.    Legal Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.,* 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with the moving party regardless of which party would have the burden of persuasion at trial." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (internal quotation marks

---

[1] This Court has jurisdiction of the matter under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.

omitted).  Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'"  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 586–87 (internal quotation marks omitted).  Thus, while "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted).  But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence."  *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal quotation marks omitted).  Instead, "there must be evidence on which the jury could reasonably find for the non-movant." *Id.* (cleaned up).

"Where, as here, cross-motions for summary judgment are filed, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, Civil Action No. 19-2184, 2020 WL 2404904, at *3 (E.D. Pa. May

12, 2020) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

**III.   Discussion**

Pennsylvania substantive law controls here, as the parties agreed in the Settlement Agreement's "controlling law" provision. ECF No. 46 at 18; *see Commonwealth Cap. Corp. v. Getronics, Inc.*, 147 F. App'x 253, 255 (3d Cir. 2005). Under Pennsylvania law, a breach of contract has three elements: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Only the second and third elements are at issue—the parties agree that the Settlement Agreement is a valid existing contract.

    **A.   State Farm Breached the Settlement Agreement by Publicly Disclosing its Terms on the Docket**

The Wenks claim two breaches of the Settlement Agreement's confidentiality provision and argue that the Court should enter summary judgment on both theories. In Count I, they allege that State Farm breached the agreement by filing in the Coverage Action a public document that included confidential Settlement Agreement terms. In Count II, the Wenks allege that State Farm breached the Settlement Agreement's implied covenant of good faith and fair dealing by moving for permission to file settlement terms in the Coverage Action. State Farm, in its own Motion and in response to the Wenks' Motion, contests only the second claimed breach.

The first breach does not require prolonged analysis. The confidentiality provision forbade disclosure of Settlement Agreement terms in the Coverage Action without a court order. And the court order State Farm obtained allowed Settlement Agreement terms to be filed only under seal. State Farm nevertheless disclosed those terms in a filing on the public docket, where it remained

for about one week. As to these material facts, there are no disputes, and the record establishes a breach of the Settlement Agreement. *See* ECF No. 33 at 5 (limiting State Farm's argument regarding breach to Count II).

The second alleged breach is more complicated. On this point, State Farm's argument does not directly contest the Wenks' theory of a breach of the covenant of good faith and fair dealing. Instead, State Farm maintains that Count II is barred by Pennsylvania's doctrine of judicial privilege. State Farm acknowledges that Pennsylvania courts have not applied the doctrine to a breach-of-contract claim but argues that the Court should do so here. The Wenks disagree. Ultimately, State Farm has the better of the argument.

Where it applies, Pennsylvania's doctrine of judicial privilege provides "absolute immunity for 'communications which are issued in the regular course of judicial proceedings and which are pertinent and material to the redress or relief sought.'" *Bochetto v. Gibson*, 860 A.2d 67, 71 (Pa. 2004). The privilege extends at least to judges, witnesses, parties, and their attorneys. *Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015). Although invoked most frequently in the context of defamation, the doctrine has been extended beyond that cause of action where "the extension of immunity is in furtherance of the policy underlying the doctrine." *LLMD of Michigan, Inc. v. Jackson-Cross Co.*, 740 A.2d 186, 189 (Pa. 1999). That policy is to "assure that . . . claims are justly resolved" by "permit[ting] all suiters, however bold and wicked, however virtuous and timid, to secure access to the courts of justice to present whatever claims, true or false, real or fictitious, they seek to adjudicate." *Post v. Mendel*, 507 A.2d 351, 355 (Pa. 1986).

The privilege applies here, as a matter of law. Count II would impose liability upon State Farm for filing a motion to disclose information—the terms of the Settlement Agreement—material to its argument for a setoff in the Coverage Action. Denying State Farm the protection

of judicial privilege would thus chill, if not outright foreclose, its ability to seek relief to which it might otherwise be entitled. That result is contrary to the public policy underlying the privilege—that "claims [be] justly resolved." *Post*, 507 A.2d at 355. Accordingly, the Court concludes that the Pennsylvania Supreme Court would extend the doctrine to the circumstances presented here, as other courts have in similar circumstances. *See Berrier v. Simplicity Mfg., Inc.*, 563 F.3d 38, 45–46 (3d Cir. 2009) ("In the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide this case."); *see also, e.g.*, *Rain v. Rolls-Royce Corp.*, 626 F.3d 372, 377–78 (7th Cir. 2010) (collecting cases); *Kimmel & Silverman, P.C. v. Porro*, 53 F. Supp. 3d 325, 343 (D. Mass. 2014) (collecting cases).

Because State Farm's motion in the Coverage Action was a communication "issued in the regular course of judicial proceedings" and was "pertinent and material to the redress or relief sought," Count II of the Wenks' Complaint fails as a matter of law.[2] The Court will therefore deny the Wenks' Motion as to Count II, grant State Farm's Motion as to Count II, and enter summary judgment on Count II in favor of State Farm.

### B. The Wenks Are Entitled to Nominal Damages Only

The Wenks seek summary judgment in the amount of $250,000 in liquidated damages on Count I. State Farm argues that the Wenks cannot establish damages—liquidated or actual—such that summary judgment should be granted in its favor. Although the Court agrees that the Wenks cannot recover liquidated or actual damages, it concludes that the Wenks are entitled to nominal damages for State Farm's breach of the Settlement Agreement. The Court will therefore deny

---

[2] In so holding, the Court reiterates that State Farm limited its judicial privilege argument to Count II. The Court therefore does not opine as to whether judicial privilege would foreclose liability as to Count I—a question that implicates different considerations than those implicated in the analysis of the privilege's application to Count II.

State Farm's Motion insofar as it seeks summary judgment in its favor on Count I and grant the Wenks' Motion as to Count I, but only insofar as the Court will enter a judgment of $1 in favor of the Wenks.

### 1. Liquidated Damages are Unavailable

"Liquidated damages" represent the "sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable . . . if the breach occurs." *Pantuso Motors, Inc. v. Corestates Bank, N.A.*, 798 A.2d 1277, 1282 (Pa. 2002) (internal quotation marks omitted). By contrast, a "penalty . . . is fixed, not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach." *Id.* (internal quotation marks omitted). Liquidated damages clauses are generally enforceable, while penalties are not. *D.A. Nolt, Inc. v. Philadelphia Mun. Auth.*, 463 F. Supp. 3d 539, 543 (E.D. Pa. 2020).

State Farm argues that the Wenks cannot recover liquidated damages for two reasons. First, State Farm maintains that although the Settlement Agreement references liquidated damages, such damages are unavailable because the parties never agreed to an *amount* of liquidated damages. Second, State Farm argues that even if there were a $250,000 liquidated damages provision—as the Wenks insist—it would be an unenforceable penalty. The Court agrees on both fronts.

*First*, the parties did not enter into an enforceable agreement for liquidated damages. By definition, a liquidated damages clause is only enforceable if it provides a mechanism—whether a fixed sum or a formula to apply in the event of a breach—to determine the amount owed. *See Pantuso Motors*, 798 A.2d at 1282; *D.A. Nolt*, 463 F. Supp. 3d at 543. The Wenks do not dispute

this premise and they concede that the Settlement Agreement itself does not include the requisite information. ECF No. 45 ¶ 23. To overcome this defect, the Wenks rely on the parol evidence rule, arguing that extrinsic evidence—namely, the parties' negotiations regarding liquidated damages—can fill the gap. It cannot.

The parol evidence rule is a "substantive rule of contract law" that limits the use of evidence extrinsic to an integrated contract—like the Settlement Agreement[3]—to "nullify, modify, or augment the terms of [the] contract." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 213 (3d Cir. 2022). There are, however, exceptions to the rule—"[e]xtrinsic evidence may be used to modify contract terms when an integrated contract is ambiguous or to add contract terms omitted by fraud in the execution, by accident, or by mistake." *Id.* at 213 n.5; *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 437 (Pa. 2004). Where such an exception applies, the parties may rely on extrinsic evidence—for example, the parties' negotiations—to shed light on the nature of their agreement. *See AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 220 (3d Cir. 2009).

Here, even assuming that the Settlement Agreement is ambiguous,[4] no reasonable juror could find that the parties agreed to an amount of liquidated damages—$250,000 or otherwise.

---

[3] The Wenks acknowledge the existence of an integration clause in the Settlement Agreement and do not contest State Farm's argument that the Settlement Agreement is an integrated document. *See* ECF No. 45 ¶ 22; *see generally* ECF Nos. 44, 48. Indeed, the Wenks' reliance on an *exception* to the parol evidence rule, a rule that applies to integrated agreements, confirms their agreement that the Settlement Agreement is integrated.

[4] The Wenks' reliance on ambiguity as their way around the parol evidence rule is noteworthy. Generally, a contract is ambiguous only if it is susceptible to two or more reasonable readings. *See Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006). Here, however, the Settlement Agreement provides *no* reasonable readings regarding the amount of liquidated damages—it is simply silent. And even accounting for the Wenks' extrinsic evidence, that would at most provide one reading—reasonable or not—of the clause. So it appears that the Settlement is not truly "ambiguous." Instead, it would seem that the appropriate lens is that of an "omission." That causes further problems for the Wenks because, generally, extrinsic evidence can only fill an omission that results from fraud, an accident, or a mistake. *SodexoMAGIC, LLC*, 24 F.4th at 213. And here, there are no allegations of fraud, and the omission of an amount of liquidated damages was no accident or mistake because it was at the request of State Farm and the contractor parties in the Contractor Action. All of this is to say that there is an open question as to whether the Wenks could rely on extrinsic evidence at all. Ultimately, however, the Court need not reach that issue, because (1) State Farm hasn't raised it and (2) the extrinsic evidence that the Wenks rely on does not support their claim for $250,000 in liquidated damages.

The evidence shows that on March 27, 2017, counsel for the Wenks proposed including the phrase "in the amount of $250,000" to the liquidated damages provision. ECF No. 46 at 43. The other parties, however, rejected the proposal. First, on March 28, 2017, an attorney for a contractor party responded, "Object to the inclusion of an amount of money listed here [referring to the Wenks' proposal]." *Id.* Then, on April 4, 2017, another contractor attorney wrote, "I concur . . . and will not agree to the inclusion of a specific dollar amount." *Id.* Finally, also on April 4, 2017, counsel for State Farm sent an email stating his concurrence with the earlier comments and adding, "I . . . believe setting any dollar value would be improper." ECF No. 46 at 25. The Wenks point to no other extrinsic evidence to support their claim for liquidated damages. *See* ECF No. 37 at 4–7; ECF No. 44 at 3–5; ECF No. 48 at 4–5. Under these circumstances, no reasonable juror could find that State Farm and the Wenks agreed that a violation of the confidentiality provision would result in $250,000—or any other specific amount—in liquidated damages. The Wenks, therefore, cannot recover liquidated damages as a matter of law.

**Second**, even if the parties had agreed to $250,000 in damages for a breach of the confidentiality provision, that would be an unenforceable penalty. To be enforceable, a liquidated damages provision "must be a reasonable forecast of the possible harm to the non-breaching party." *Palmieri v. Partridge*, 853 A.2d 1076, 1080 (Pa. Super. 2004). It follows that courts will not enforce a purported liquidated damages provision "unsupported by any 'indication in the record' that the figure at issue 'was an accurate pre-estimate of actual damages caused by the breach.'" *D.A. Nolt*, 463 F. Supp. 3d at 544 (quoting *Palmieri*, 853 A.2d at 1080). Such a provision is, instead, a penalty and therefore void. *See id.* Whether a provision is for liquidated damages or a penalty is a question for the court, "to be determined by the intention of the parties, examined in the light of its subject-matter and its surroundings." *Id.* (cleaned up). "The party

asserting that the liquidated damages provision is unreasonable bears the burden of proof." *Mapp v. Westmoreland Cnty.*, No. CV 2:22-718, 2022 WL 2917567, at *4 (W.D. Pa. July 25, 2022) (Dodge, M.J.) (internal quotation marks omitted).

Here, there is no indication in the record that $250,000 was a "reasonable forecast" of the damages that would result from a breach of the confidentiality provision. The only evidence regarding how the $250,000 figure came to be is from Mr. Wenk's deposition testimony. *See* ECF No. 34-4 at 7:9–16 (Mrs. Wenk testifying that she was not involved in determining the amount of liquidated damages). At that deposition, Mr. Wenk explained that he chose $250,000 because "without that confidentiality agreement, [he] would have had to get 250,000 more or [he] never would have settled the case." ECF No. 34-3 at 34:3–8. In other words, even viewing the record in the Wenks' favor, $250,000 represented Mr. Wenk's subjective valuation of the confidentiality provision, not an effort to predict the damages that would result from its breach. Thus, although damages from the breach of a confidentiality agreement are generally difficult to determine—making liquidated damages more likely to be appropriate—they are unavailable here. *See Pantuso Motors,* 798 A.2d at 1282 ("[C]ontracting parties may provide for pre-determined liquidated damages in the event one party fails to perform, particularly in circumstances where actual damages would be difficult to estimate in advance or to prove after a breach occurs.").

### B.     Only Nominal Damages Are Available

Absent an enforceable liquidated damages provision, a non-breaching party is entitled to "whatever damages he suffered, provided (1) they were such as would naturally and ordinarily result from the breach, or (2) they were reasonably foreseeable and within the contemplation of the parties at the time they made the contract, and (3) they can be proved with reasonable certainty." *Ferrer v. Trustees of Univ. of Pa.*, 825 A.2d 591, 610 (Pa. 2002). Notably, although

damages are an element of a claim for breach of contract, "[u]nder Pennsylvania law, if a plaintiff is able to prove a breach of contract but can show no damages flowing from the breach, the plaintiff is nonetheless entitled to recover nominal damages." *Wolfe v. Allstate Prop. & Cas. Ins.*, 790 F.3d 487, 497 (3d Cir. 2015).  Thus, it is generally improper to grant summary judgment on the basis of a plaintiff's failure to prove actual damages.  *Id.*

In its own Motion for Summary Judgment and in opposition to the Wenks' Motion, State Farm argues that the Wenks cannot, as a matter of law, establish actual damages flowing from State Farm's breach of the Settlement Agreement.  Notably, the Wenks do not respond to State Farm's actual-damages argument—either in opposition to State Farm's Motion or in defense of their own.  The record suggests why.  Mrs. Wenk conceded at her deposition that she was unaware of any harm from State Farm's disclosure.  ECF No. 34-4 at 7:2–7.  And Mr. Wenk similarly conceded that he was not harmed by the one person who viewed the public filing, who was a friend of Mr. Wenk's.  *See* ECF No. 46 at 73:1–10;  ECF No. 45 ¶ 18.  Otherwise, when asked about actual damages, Mr. Wenk alluded to the possibility that the public filing was saved on a third-party server such that the terms of the Settlement Agreement would remain public.  ECF No. 46 at 74:7–18.  The Wenks have not supported that speculative theory with any evidence.  State Farm is therefore correct that, even viewing the evidence in the light most favorable to the Wenks, they cannot establish actual damages.[5]

It does not follow, however, that State Farm is entitled to summary judgment, because the Wenks are entitled to nominal damages as compensation for State Farm's breach.  Courts are split as to whether nominal damages are available where—as here—the plaintiff did not request them,

---

[5] The lack of evidence of actual damages only supports the Court's holding that the Wenks' purported $250,000 liquidated damages provision would be an unenforceable penalty.  *See Finkle v. Gulf & W. Mfg. Co.*, 744 F.2d 1015, 1021 (3d Cir. 1984) ("If the amount of damages assessed is subsequently adjudged unreasonable in the light of either anticipated or actual harm, the contractual provision will be voided as a penalty.") (internal citation omitted).

either in the pleadings or through a request to amend the pleadings to add such a claim. *See Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R. & Power REIT*, No. 2:11-CV-1588-TFM, 2014 WL 2808907, at *19–20 (W.D. Pa. June 19, 2014) (McVerry, J.) (collecting cases). This Court concludes that the better approach is to award nominal damages even without a request. Federal Rule of Civil Procedure 54 provides that apart from a default judgment, "[e]very other final judgment should grant the relief to which each party is entitled, *even if the party has not demanded that relief in its pleadings*." Fed. R. Civ. P. 54(c) (emphasis added); *see also*, *Norfolk S.*, 2014 WL 2808907, at 20 n.18. The cases holding that a party is entitled to nominal damages only upon request do not acknowledge Rule 54(c) or otherwise rely on caselaw holding that the failure to award nominal damages without a request is not reversible error. *See, e.g.*, *Cohen v. Resol. Tr.*, 107 F. App'x 287, 289 (3d Cir. 2004) (citing *Bastian v. Marienville Glass Co.*, 126 A. 798, 800 (Pa. 1924); *Elia v. Olszewski*, 84 A.2d 188, 191 (Pa. 1951)). While it may not be *reversible* error to deny unrequested nominal damages, it would be error, nonetheless, at least because the Wenks requested an award of any relief that this Court deemed proper. ECF No. 1-2 at 8. Because the Wenks have established the breach of a valid agreement—the Settlement Agreement—but have failed to show liquidated or actual damages, the Court will grant their Motion in part, awarding $1 in nominal damages.

## IV. Conclusion

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART** State Farm's and the Wenks' cross-motions for summary judgment, as set forth in the accompanying Order.

DATED this 8th day of September, 2023.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record